IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 07-00406 SOM |
| | ) | CIV. NO. 09-00573 SOM/BMK |
| Plaintiff, | ) | |
| | ) | ORDER DENYING MOTION TO |
| vs. | ) | VACATE, SET ASIDE, OR CORRECT |
| | ) | A SENTENCE BY A PERSON IN |
| PATRICIA M. SYLING, | ) | FEDERAL CUSTODY UNDER 28 |
| | ) | U.S.C. § 2255 |
| Defendant. | ) | |
| _____ | ) | |

ORDER DENYING MOTION TO VACATE, SET ASIDE, OR
CORRECT A SENTENCE BY A PERSON IN FEDERAL
CUSTODY UNDER 28 U.S.C. § 2255

I.      INTRODUCTION.

Patricia M. Syling has admitted that she unlawfully obtained hundreds of thousands of dollars from her previous employer, the Queens Medical Center.  She pled guilty without a plea agreement to eight counts of mail fraud relating to that unlawful conduct.  In May 2009, the court sentenced Syling to 40 months in prison.  In December 2009, Syling filed the present Motion to Vacate, Set Aside, or Correct A Sentence by a Person in Federal Custody under 28 U.S.C. § 2255.  The Government responded, and Syling filed a reply memorandum.  After a thorough review of the record, this court denies Syling's motion, as Syling fails to show that she is entitled to relief.  This court also declines to issue a certificate of appealability.

II.     STANDARD OF REVIEW.

Under 28 U.S.C. § 2255, a court may grant relief to a

federal prisoner who challenges the imposition or length of his or her incarceration on any of the following four grounds: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; or (4) that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255(a).  A petitioner must allege specific facts that, if true, would entitle the petitioner to relief.  See United States v. Rodrigues, 347 F.3d 818, 824 (9th Cir. 2003) (citing United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996)).

A judge may dismiss a § 2255 motion if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."  Rule 4(b), Section 2255 Rules.  A court need not hold an evidentiary hearing if the allegations are "palpably incredible or patently frivolous" or if the issues can be conclusively decided on the basis of the evidence in the record. See Blackledge v. Allison, 431 U.S. 63, 76 (1977); see also United States v. Mejia-Mesa, 153 F.3d 925, 929 (9th Cir. 1998) (noting that a "district court has discretion to deny an evidentiary hearing on a § 2255 claim where the files and records conclusively show that the movant is not entitled to relief"); Frazer v. United States, 18 F.3d 778, 781 (9th Cir. 1994).

III.      BACKGROUND.

        In 2001, the Queens Medical Center ("QMC"), located in
Honolulu, Hawaii, hired Syling as a "corporate compliance
administrator," giving her authority to negotiate certain
contracts with private health insurance providers.  Syling also
owned and was the sole proprietor of two businesses, Healthcare
Financial & Compliance Management, and Healthcare Financial
Group.  In 2001, she also opened an account with a Bank of
America branch in Florida under her name, "d/b/a Healthcare
Financial & Compliance Management."  Ex. A, attached to
Government's Response (read into the record by the Government
during the guilty plea colloquy and accepted as true by Syling).

        At QMC, Syling persuaded QMC officials to sign
contracts with her businesses.  Syling then submitted invoices to
QMC for work that her businesses were purported to have
performed.  QMC issued checks to her businesses, and Syling
mailed the checks to a Bank of America branch in Florida, where
the money was deposited into her account.  On eight occasions,
between 2002 to 2004, Syling used the postal service to mail
QMC-issued checks to the Florida Bank of America branch, where
the money was deposited into her account.  See Tape of Plea (Feb.
6, 2006); see also Ex. A, attached to Government's Response.

        On December 13, 2006, the Government charged Syling
with mail fraud.  Syling was arrested in Florida on December 19,

3

2006.  On February 5, 2007, the Magistrate Judge ordered Syling
released on bond and allowed her to travel to Florida.  See Order
Setting Conditions of Release, Doc. No. 8 (Feb. 6, 2007).

Syling traveled to Florida and was hired by a health
care company in a position similar to the one she had held at
QMC.  See Memorandum of Points and Authorities in Support of
Motion to Revoke Bail and Conditions of Pretrial Release, Doc.
No. 46 (Oct. 27, 2008).  She did not tell her Pretrial Services
Officer in Hawaii about her new job.  It was not until after she
quit her job with the Florida health care company that it learned
that Syling may have engaged in activities similar to those for
which she was being criminally prosecuted in Hawaii.  The Florida
health care company concluded that Syling had fabricated a
contract and funneled bank funds into her wholly owned business
for services that her business falsely purported to have
performed under the contract.  Shipley Decl.  ¶¶ 3-7.

On August 23, 2007, Syling was indicted for carrying
out a scheme to defraud QMC and for mail fraud in violation of 18
U.S.C. § 1341.  See Indictment, Doc. No. 11, (Aug. 23, 2007).
Syling was arrested on September 29, 2008.

On February 6, 2009, Syling pled guilty to all eight
counts in the Indictment before a Magistrate Judge.  During her
guilty plea colloquy, Syling stated under penalty of perjury that
she had proposed contracts to QMC under which her businesses was

4

to perform work for QMC, that QMC authorized the contracts, and that QMC then paid Syling's businesses even though they performed little or no services for QMC.  Syling said she was knowingly and voluntarily pleading guilty.

On May 29, 2009, this court sentenced Syling to 40 months in prison.  In determining Syling's offense level under the sentencing guidelines, the court imposed a two-level increase for abuse of a position of trust.  This court entered judgment on June 3, 2009.

Syling did not appeal.  Instead, on December 4, 2009, Syling filed her present § 2255 motion.  On December 11, 2009, Syling refiled her motion, adding more exhibits.  In her motion, Syling says that her counsel was ineffective; her plea was not knowingly, voluntarily, or intelligently given; the court should not have imposed a two-level increase when determining her sentence; and the prosecutor engaged in misconduct.

IV.     ANALYSIS.

        A.    Syling's Arguments That Her Counsel Was Ineffective Are
              Unsupported.

To prevail on an ineffective assistance of counsel claim, a petitioner must show both that her counsel's performance fell below an objective standard of reasonableness, and that the deficiency in her counsel's performance prejudiced her. Strickland v. Washington, 466 U.S. 668, 688, 692 (1984).  When a petitioner asserts that her counsel was deficient with respect to

a guilty plea, the petitioner satisfies the "prejudice"
requirement by showing "that there is a reasonable probability
that, but for counsel's errors, [the petitioner] would not have
pleaded guilty and would have insisted on going to trial."  <u>Hill</u>
<u>v. Lockhart</u>, 474 U.S. 52, 59 (1985).

> 1.   Syling's Counsel Was Not Ineffective In Having
>      Allegedly Failed to Review a Document Prepared by
>      the Government.

At Syling's plea hearing, the Government gave the court
a document that outlined the charges against Syling and the facts
satisfying the elements of each count charged in the Indictment.
The Government then read the factual allegations from the
document, and the court asked Syling whether she agreed to the
facts as read.  Syling argues that her counsel was ineffective
because he allegedly failed to review this document before the
hearing.

The Government says that the factual assertions in the
document, attached as Exhibit A to the Government's Response to
Syling's Petition, mirrored factual statements contained in a
proposed Memorandum of Plea Agreement that Syling's counsel had
reviewed but that Syling ultimately rejected.

Even if Syling's counsel did not review the document,
Syling's counsel was not ineffective because Syling has not
demonstrated that she was prejudiced by her attorney's conduct.
The Magistrate Judge asked Syling to affirm or deny the specific

6

facts that were read from the document.  Syling affirmed the
facts.  Syling had many opportunities to deny the facts, to state
that there was a factual discrepancy, or to otherwise make her
views about the alleged real facts known.  Syling does not
persuade this court that she was prejudiced--in other words, that
she would not have pled guilty and would have insisted on going
to trial if her attorney had reviewed the document before her
guilty plea.  Syling herself admitted that the document
accurately represented what she had done.

> 2.    Syling's Counsel Was Not Ineffective In Having
>       Allegedly Failed to Demand an Adequate Factual
>       Basis for A Sentencing Adjustment.

The United States Sentencing Guidelines § 3B1.3 allows
a court to increase a defendant's offense level if the defendant
abused a position of trust in a manner that significantly
facilitated the commission or concealment of the offense.  This
court found that Syling held a position of trust, and that she
abused that position.  This court increased her offense level by
two points.

Syling argues that her counsel was constitutionally
ineffective in failing to "demand an adequate basis for the
enhancement of Abuse of Trust."  Motion at 3.  Syling's argument
fails.

Syling's attorney did demand a basis for the increase
by objecting to the enhancement.  Syling's counsel objected to

7

the increase in oral agument at the sentencing hearing and in a sentencing statement filed with the court.  <u>See</u> Sentencing Statement, Doc. No. 70 (Apr. 24, 2009); <u>see also</u> Transcript of Proceedings, Doc. No. 77 at 5 (Syling's attorney stated that there is "sufficient basis to believe [Syling] was not in a position to make those final decisions.").  Syling's counsel cannot have been constitutionally ineffective in this regard given his objection to the increase.

        3.    Syling's Counsel Was Not Ineffective In Having
             <u>Allegedly Failed to Investigate Certain Matters.</u>

Syling argues that her attorney should have investigated whether QMC paid for her to attend a class on how to operate and own a business.  Syling also contends her attorney should have obtained QMC board meeting minutes, reviewed emails from her computer, and investigated three legal defenses. Syling appears to argue that the results of the investigation would have shown that QMC had approved the contracts allegedly formed between QMC and Syling, and that Syling told QMC that she owned the businesses with which QMC contracted.  Syling argues that if QMC approved the contracts, Syling cannot be liable for mail fraud.

Syling's argument fails, as Syling has not demonstrated that she was prejudiced in any way by her attorney's alleged failure to investigate.  Syling has not shown that, but for her counsel's lack of investigation, she would not have pled guilty.

The information Syling says her attorney should have obtained
through an investigation appears to concern matters Syling
herself had full knowledge of.  In other words, this alleged
exculpatory evidence was not newly discovered; Syling knew about
this, and could have told her attorney about it without any
investigation.

Additionally, the evidence would not have been
exculpatory.  Even if QMC did approve the contracts, QMC did not
approve payment for nonperformance of such contracts.  Syling
admitted that she did not provide any meaningful service under
the contracts and received money through the mail from QMC for
services that were never provided.  See Tape of Plea (Feb. 6,
2006).

The court notes that Syling says that her counsel was
ineffective in failing to investigate three defenses.  As Syling
does not detail the three new defenses or the matters that
allegedly should have been investigated, the court reads Syling's
reference to investigation of "three defenses" as a reference to
the foregoing investigatory matters.  If this reading is
incorrect, then Syling's failure to provide detail with respect
to these defenses renders her argument meaningless.  See
Rodriques, 347 F.3d at 824.

        B.    Syling's Guilty Plea Was Knowing, Voluntary, and
              Intelligent.

Syling argues that, because she was being abused at

9

prison, and because she was under extreme anxiety, depression, and stress based on isolation from her children, she did not knowingly and voluntarily plead guilty.

A guilty plea is constitutionally valid only if it is "voluntary" and "intelligent." Bousley v. United States, 523 U.S. 614, 618 (1998) (citing Brady v. United States, 397 U.S. 742, 748 (1970)). A guilty plea is valid when a defendant is advised of the nature and elements of the charges and the possible punishment, and understands that she is waiving her constitutional rights to avoid self-incrimination, to confront her accuser, and to have a jury decide her case. See Brady, 397 U.S. at 749. Additionally, a plea must not be based on threats, misrepresentations, or improper promises. Hill v. Lockhart, 474 U.S. 52, 56 (1985); see also Doe v. Woodford, 508 F.3d 563, 570, 572 (9th Cir. 2007) (recognizing that the decision to pled guilty can be difficult, but noting that the fact that one struggles with the decision or comes to regret it does not render it coerced).

Statements made in court at the time of a plea carry a strong presumption of verity and are entitled to great weight. See Doe, 508 F.3d at 572 (finding a guilty plea voluntary when the defendant had participated in a thorough plea colloquy in which he stated that his plea was voluntary and that he had had enough time to discuss the plea with his attorney); see also

10

United States v. Kazcynski, 239 F.3d 1108, 1114-15 (9th Cir. 2001) ("substantial weight" must be given to in-court statements); Chizen v. Hunter, 809 F.2d 560, 562 (9th Cir. 1986) (internal citations omitted).  The presumption of verity is rebuttable, but the subsequent presentation of contentions that, in the face of the record, are wholly incredible do not overcome the presumption.  Blackledge v. Allison, 431 U.S. 63, 74 (1977) (citations omitted).

Syling argues that her plea was unlawfully induced because she was under duress relating to being forced to do homework assignments for a corrections officer, and was depressed over being separated from her child.  However, a review of the tape of the plea hearing conducted by the Magistrate Judge establishes that Syling knowingly, voluntarily, and intelligently pled guilty.  The tape reflects that Syling was placed under oath and was fully advised of the nature and elements of the charge and the maximum possible punishment.  She acknowledged that she was so advised and that she understood that she was waiving her constitutional rights to avoid self-incrimination, to confront her accuser, and to have a jury decide her case.  She stated that she understood the charges and that no one had forced her to plead guilty.  The Magistrate Judge's finding that she was competent to enter a plea is fully supported by the record.

In the memo attached to her § 2255 motion, Syling says

11

that she was forced to perform personal services for a corrections officer. This court initially read this statement as alleging that Syling had been sexually abused.  In her reply, Syling clarifies that she was not referring to any sexual abuse, but instead to being required by a corrections officer to help him with his homework assignments.  Syling says that this contributed to making her unable to "understand all the elements that she pled [sic] guilty to" in February 2009.  Motion at 5.

Syling's argument that she was under duress at the time of her plea because a corrections officer was allegedly forcing her to do his homework does not overcome the presumption that she was being truthful at the hearing.  Syling does not claim that the corrections officer forced or threatened her to plead guilty. Even if she feared the corrections officer, she does not show or argue that this fear caused her to plead guilty.  That would be a difficult argument for her to make, as she confronted the corrections officer and told him she would not do his homework. She says that he then grabbed her wrist.  The Government asserts that Syling filed a grievance with prison officials over this matter, but that the grievance was filed only a few days before Syling was sentenced, and months after she had pled guilty. Syling does not provide chronological details that show that the officer's demands, which allegedly began in November 2008, were so threatening or overbearing as of February 6, 2009, when she

12

pled guilty, that she was unable to make knowing, voluntary, and intelligent decisions.

Syling also says that she was in an "uncertain mental state" over being separated from her son, born in May 2008, and her other children.  This allegation does not, without more, establish that her guilty plea was involuntary, especially given her statement under oath that she was knowingly and voluntarily pleading guilty.

In sum, Syling has not overcome the strong presumption that her guilty plea, as she stated in court, was given knowingly, voluntarily, and intelligently.

C.   Syling Cannot Challenge Her Offense Level Given Her
     Failure to Appeal.

Syling argues that the court erred in enhancing her offense level under the United States Sentencing Guidelines.  The court, pursuant to USSG § 3B1.3, increased her level based on the abuse of a position of trust.  Syling argues that she was never in a position of trust.  Syling cannot bring this argument here, as she did not appeal or otherwise challenge this ruling, or show cause for failing to appeal.

A § 2255 petitioner waives any alleged sentencing error if the petitioner does not timely appeal or otherwise challenge the issue, unless the error implicates constitutional concerns. United States v. Gianelli, 543 F.3d 1178, 1184 (9th Cir. 2008) (noting that a petitioner waived his ability to appeal the amount

13

of restitution by failing to file a direct appeal from the

judgment); <u>United States v. Schlesinger</u>, 49 F.3d 483, 485 (9th

Cir. 1994) (noting that "nonconstitutional sentencing errors that

have not been raised on direct appeal have been waived and

generally may not be reviewed by way of 28 U.S.C. § 2255");

<u>Evenstad v. United States</u>, 978 F.2d 1154, 1158 (9th Cir. 1992)

(noting that the petitioner was barred from challenging his

sentence on issues not suggesting constitutional error).

> The Ninth Circuit reasons:
>
> If defendants could routinely raise, in a
> § 2255 collateral proceeding, errors in
> sentencing not raised on direct appeal which
> the sentencing court had not an opportunity
> to correct, Congress's intent of encouraging
> direct appellate review of sentences under
> the Sentencing Guidelines would be
> frustrated.

<u>Schlesinger</u>, 49 F.3d at 484-85 (quoting <u>United States v. Essig</u>,

10 F.3d 968, 979 (3d Cir. 1993)).

When the sentencing error does implicate constitutional

concerns, a petitioner is procedurally barred from raising an

issue in a § 2255 motion if it could have been raised earlier,

unless the petitioner can demonstrate both "cause" for the delay

and "prejudice" resulting from the alleged error.  <u>Massaro v.</u>

<u>United States</u>, 538 U.S. 500, 504 (2003).

Syling merely argues that her sentence was improperly

calculated.  This argument is procedurally barred.  Nor does it

appear that the two-level enhancement involved a constitutional

issue.  In any event, Syling has not demonstrated cause for
failing to appeal.  When "there is absolutely no reason why [the
petitioner] should not have known of, and been able to appeal,
the alleged errors immediately," the petitioner cannot
demonstrate cause.  <u>Schlesinger</u>, 49 F.3d at 486.  Syling has
offered no explanation for her failure to appeal.  She does not
argue that she did not know she had to appeal.  This court
clearly told her at her sentencing hearing that she had a short
ten-day period in which to appeal.

  D. <u>Syling Does Not Establish Prosecutorial Misconduct.</u>

   Syling argues that the Government "colluded" with
others to revoke her pretrial release.  After Syling was released
on pretrial conditions on October 15, 2007, she returned to
Florida.  On September 29, 2008, she was arrested for violations
of the conditions of her pretrial release.

   Syling says that a prosecutor in this district "created
evidence he needed to revoke [Syling's] bond."  Motion at 11.
Syling says her Fourteenth Amendment rights were violated when
the prosecutor drafted a civil complaint against her in Florida,
filed the complaint after her bond was revoked, and told three
different versions of what happened.  She says that the
"cumulative effect of prosecutorial errors in this case warrants
a reversal of the conviction."  Motion at 12.

   Syling does not show that anything related to the

15

revocation of her pretrial release or the drafting of a civil complaint in Florida should nullify her guilty plea.  Quite apart from her failure to show the alleged participation by the Government, much less wrongdoing, those matters do not negate her guilt or justify the voiding of her guilty plea or her sentence.

Once again, Syling appears to be relying on information she already had before she pled guilty.  If this is so, then she could have raised this matter earlier.  She gives no explanation as to why she did not do so.

E.   This Court Declines to Issue a Certificate of Appealability.

A petitioner must obtain a certificate of appealability before pursuing any appeal from a final order in a § 2255 proceeding.  See 28 U.S.C. § 2253(c)(1)(B).

When the denial of a § 2255 motion is based on the merits of the claims in the motion, a court should issue a certificate of appealability only when the appeal presents a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  A petitioner is required to show that reasonable jurists could debate whether the issues should have been resolved differently or are "adequate to deserve encouragement to proceed further."  Slack v. McDaniel, 529 U.S. 473, 483 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983), superseded on other grounds by 28 U.S.C. § 2253(c)(2)); see also Mendez v. Knowles, 556 F.3d 757, 771 (9th

16

Cir. 2009).  The district court must indicate which specific
issue or issues satisfy the standard for issuing a certificate,
or state its reasons for denying a certificate.  United States v.
Asrar, 116 F.3d 1268, 1269 (9th Cir. 1997).

The court declines to issue a certificate of
appealability.  Syling's counsel did not perform ineffectively,
and Syling has not, in any event, shown any prejudice arising
from her attorney's conduct.  Syling also fails to show that she
did not knowingly and voluntarily plead guilty, or that there was
any prosecutorial misconduct.  Reasonable jurists would not find
this court's assessment of Syling's claims debatable or wrong.
Accordingly, the court declines to issue a certificate of
appealability.

V.      CONCLUSION.

For the foregoing reasons, the court denies the motion
for § 2255 relief without an evidentiary hearing and declines to
issue a certificate of appealability.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii March 12, 2010



/s/ Susan Oki Mollway

Susan Oki Mollway
Chief United States District Judge

United States v. Syling, 07CR406 SOM-02; 09cv573 SOM/BMK; ORDER DENYING MOTION
TO VACATE, SET ASIDE, OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY
UNDER 28 U.S.C. § 2255